UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALLISON EDWARDS,<br><br>Plaintiff,<br><br>-against-<br><br>CVS HEALTH CORPORATION,<br><br>Defendant. | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | Civil Action No. 23-cv-4340 |

**DEFENDANT'S NOTICE OF REMOVAL**

**To: Clerk**
**United States District Court**
**Southern District of New York**
**500 Pearl Street**
**New York, New York 10007**

**SIR OR MADAM:**

Defendant CVS Health Corporation (hereinafter, "CVS"), by and through its undersigned counsel, hereby gives notice of removal of this action from the Supreme Court of the State of New York, County of New York, where it is currently pending, to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1441 and 28 U.S.C. § 1446 and states the following in support of such removal:

## I. STATE COURT ACTION

1. Plaintiff Allison Edwards ("Plaintiff") filed this action in January 2023 against CVS Health Corporation ("Defendant") in the Supreme Court of the State of New York, County of New York, Index No. 100023-2023, and filed an Amended Complaint on or about April 12, 2023. On April 26, 2023, a process server delivered a Summons and Amended Complaint to CT

Corporation System, 450 Veterans Memorial Highway, East Providence, Rhode Island 02914 as agent for service of process for CVS.

2. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders delivered to CVS in the state court action are included with this Notice of Removal as **Exhibit A**.

3. In this lawsuit, Plaintiff alleges, *inter alia*, that Defendant discriminated and retaliated against her and created a hostile work environment, in violation of the New York City Human Rights Law. See **Exhibit A**.

4. New York County is situated in the Southern District of New York. Pursuant to 28 U.S.C. § 1441(a) this Court is the appropriate forum to entertain this Notice of Removal.

5. Concurrent with the filing of this Notice of Removal, CVS is sending notice of the removal to the Supreme Court of New York, County of New York, and to Plaintiff's counsel of record.

## II. GROUNDS FOR REMOVAL

6. Removal of this action is appropriate based on diversity of citizenship under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b). As shown below, there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *Id.* § 1332(a)(1).

### 1. Citizens of Different States

7. At the time of filing of the Complaint, and at the time of removal, Plaintiff was, and is, a citizen of the State of New York. See **Exhibit A**, page 3, Summons.

8. A corporation such as Defendant CVS Health Corporation is a citizen of the state in which it is incorporated and in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). CVS Health Corporation is a Delaware corporation with its principal place of business

in Woonsocket, Rhode Island, where it has its corporate headquarters. See Declaration of Melanie St. Angelo ("St. Angelo Decl."), attached as **Exhibit B**, ¶¶ 3, 4. Thus, it is a citizen of Delaware and Rhode Island. *See Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 1186, 1192-93 (2010) ("principal place of business" of corporation "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is often "metaphorically called its 'nerve center'").

9. In sum, Plaintiff is a citizen of a different state from the named Defendant and there is complete diversity in this matter.

### 2. Amount in Controversy

10. The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

11. In the Amended Complaint, Plaintiff alleges in each of her four Counts that she "has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000." See **Exhibit A**, Amended Complaint, pages 10-12.

12. Therefore, the amount in controversy exceeds the jurisdictional minimum of $75,000.00.

## III. TIMELINESS OF NOTICE OF REMOVAL

13. Removal of this action is timely as CVS filed this Notice of Removal within thirty (30) days of date on which Plaintiff served CVS with a copy of the Summons and Amended Complaint. See 28 U.S.C. § 1446.

14. Specifically, CVS was served on April 26, 2023, when its agent for service of process received a copy of the Summons and Amended Complaint. See **Exhibit A** at pages 1-2.

The thirtieth day after April 26 is May 26, 2023, and therefore removal of this action today is timely under 28 U.S.C. § 1446(b).

## IV. RELIEF REQUESTED

For the foregoing reasons, CVS requests that the United States District Court for the Southern District of New York assume jurisdiction over the above-captioned action and issue such further orders and processes as may be necessary to bring before it all parties necessary for the trial of this action.

Dated: Newark, New Jersey
May 24, 2023

LITTLER MENDELSON, P.C.

By: *s/ I. Michael Kessel*

I. Michael Kessel, N.Y. Bar No. 2439313
mkessel@littler.com
One Newark Center
8th Floor
Newark, NJ 07102
Telephone: 973.848.4700
Facsimile: 973.643.5626

Attorneys for Defendant

4882-9637-6163.1 / 090142-1436

# EXHIBIT A

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
04/26/2023
CT Log Number 543725628

## Service of Process Transmittal Summary

**TO:** Serviceof Process
CVS HEALTH COMPANIES
1 CVS DR MAIL CODE 1160
WOONSOCKET, RI 02895-6146

**RE:** **Process Served in Rhode Island**

**FOR:** CVS Pharmacy, Inc. (Domestic State: RI)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: ALLISON EDWARDS // To: CVS Pharmacy, Inc. |
| **CASE #:** | 1000232023 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **PROCESS SERVED ON:** | C T Corporation System, East Providence, RI |
| **DATE/METHOD OF SERVICE:** | By Process Server on 04/26/2023 at 14:44 |
| **JURISDICTION SERVED:** | Rhode Island |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/27/2023, Expected Purge Date: 05/02/2023<br><br>Image SOP<br><br>Email Notification, Serviceof Process service_of_process@cvs.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>450 Veterans Memorial Highway<br>Suite 7A<br>East Providence, RI 02914<br>800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:** Wed, Apr 26, 2023
**Server Name:** Paul Hughes

| | |
|---|---|
| Entity Served | CVS PHARMACY, INC. |
| Case Number | 100023-2023 |
| Jurisdiction | RI |

| Inserts | | |
|---|---|---|
| | | |

**[Print in black ink all areas in bold letters. This summons must be served with a complaint.]**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

Allison Edwards,
**[your name(s)]** Plaintiff(s)

- against-

CVS Health Corporation
C/O CVS PHARMACY, INC.
**[name(s) of party being sued]** Defendant(s)

---

**SUMMONS**

**Index Number** 100023-2023

**Date Index Number Purchased** ______, 20__

FILED JAN 09 2023 NEW YORK COUNTY CLERK

To the Person(s) Named as Defendant(s) above:

PLEASE TAKE NOTICE THAT YOU ARE SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: 1/6/2023, 20__
**[date of summons]**

[signature]
**[sign your name]**

Allison Edwards
**[print your name]** 205 W 135th St
New York, NY 10030 917-371-1891
**[your address and telephone number]**

C/O CVS PHARMACY, INC.
CVS Health Corporation
One CVS Drive
Woonsocket, Rhode Island
02895
**[name and address of defendant(s)]**

~~CVS Health Corporation~~
**[name and address of defendant(s)]**

Venue: Plaintiff(s) designate(s) New York County as the place of trial. The basis of this designation is:
☑ Plaintiff(s) residence in New York County
☐ Defendant(s) residence in New York County
☐ Other **[See CPLR Article 5]**: ______

A TRUE COPY ATTEST SERVED
[signature]
RI CONSTABLE #90
PAUL G HUGHES
4/26/23
SERVED ______
@ 230



Printed: 1/20/2

Notice: The nature of this action is **[briefly describe the nature of your case against the defendant(s), such as, breach of contract, negligence]**:

Sexual harassment, hostile work environment based on sex, retaliation, wrongful termination and disability discrimination

The relief sought is **[briefly describe the kind of relief you are asking for, such as money damages of $50,000]**:

Back wages, punitive damages and award such additional relief as justice requires

Should defendant(s) fail to appear herein or demand a complaint, judgment will be entered by default for the sum of ______________ **[amount of money demanded]** with interest from the date of ______________ **[date from which interest on the amount demanded is claimed]** and the costs of this action.

Venue: Plaintiff(s) designate New York County as the place of trial. The basis of this delegation is **[check box that applies]**:

- ☑ Plaintiff(s) residence in New York County
- ☐ Defendant(s) residence in New York County
- ☐ Other [**See CPLR Article 5**]: ______________

**[address and telephone no.]**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------x

ALLISON EDWARDS,
**[your name(s)]** Plaintiff(s),

- against-

CVS HEALTH CORPORATION,
**[name(s) of party being sued]** Defendant(s).

--------------------------------------------------------------x

**Index Number** 100023-2023

COMPLAINT

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiff **[your name]**, ALLISON EDWARDS respectfully shows and alleges as follows: **[number each paragraph]**

1. PRELIMINARY STATEMENT:

1. This is an action under the New York State Human Rights Law ("NYSHRL) and the New York City Human Rights Law ("NYCHRL").

PARTIES:

2. Plaintiff herein, Ms. Allison Edwards, is a citizen of the United States and resident of the state of New York. Ms. Edwards resides at 205 W 135th St, New York, New York

3. Defendant CVS Health Corp. is a corporation organized and existing under the laws of the State of New York

FACTS

Allison Edwards's Sex and/or gender

4. Plaintiff is a female

Employment with Defendant CVS Health Corp.

5. Defendant CVS Health Corp. owns and operates CVS pharmacy and retail stores

6. At all relevant times herein, Defendant CVS Health Corp. owned and operated retail store and pharmacy 10291 located at 1601 Kings Highway, Brooklyn, NY 11229

7. On or about ~~April~~ January 1, 2019 Ms. Edwards was hired by the defendant to work ~~as~~ a full time shift supervisor at this branch.

8. On January 1, 2019 Ms. Edwards's Operations Manager Hannah (John) Saddik said to her in regards to a female customer, "Allison, go help that woman, because if I go I'll punch her in the face".

9. In the month of January in 2019 during a closing shift, when Ms. Edwards called Mr. Saddik to the front for help with a customer, Mr. Saddik was upset that he was called and insinuated Ms. Edwards was stupid for not being smart enough to solve the issue without him

10. In late January or early February of 2019, Ms Edwards had a meeting with Store Manager Ekaterina (Kate) May, about Mr. Saddik's behavior. Ms. May laughed off Ms. Edwards complaint about the violent comment Mr. Saddik made to Ms. Edwards regarding the female customer on January 1, 2019. During this meeting Ms. Edwards informed Ms May of the comment Mr. Saddik made to Ms. Edwards during their closing shift that Ms. Edwards was not smart, complaints made by female associates that Mr. Saddik made disrespectful comments to them, but not to male employees, and a comment from Alyssa Sharpe, a shift supervisor at store 10291, that Mr. Saddik was a misogynist.

11. In April 2019 a regular male customer to store 10291 sexually harassed Ms. Edwards after she rang him up. The customer asked Ms. Edwards if she liked jokes. Ms. Edwards replied "Sure." The customer replied "Let me tell you the one about..." and proceeded to tell a vulgar joke about a woman with big breasts and performing a sexual act on this woman. The customer smiled and stared at Ms. Edwards breasts. Ms. Edwards told the customer I don't like jokes like that. The customer replied You don't?. Ms Edwards replied No. I don't.

12. On or about the month of June in 2019 the same regular male customer came into store 10291 during Ms. Edwards day shift. When Ms. Edwards spotted the customer she pointed him out to Associate Shenelka Rodnell and let her know that the customer had sexually harassed Ms. Edwards in the form of a vulgar joke. Ms Rodnell told Ms Edwards that this same customer also sexually harassed Ms Rodnell with the same vulgar joke. About a week after the conversation with Ms. Rodnell, the male customer that sexually harassed both Ms. Edwards and Ms. Rodnell came to store 10291 during Ms. Edwards day shift. When the customer was at the registers an associate named Imran Nasir, rang the customer up. When Mr. Nasir finished ringing the customer up for his purchases, the customer walked to the register Ms. Edwards was operating. The customer stared at Ms. Edwards breasts and started saying, "Let me tell you the one about the wife..." Ms. Edwards cut the customer off and said, I told you I don't like jokes like that. Ms. Edwards informed the customer that a [redacted] associate had made a complaint that the customer had told the associate the same vulgar joke and that it made the associate uncomfortable. Ms. Edwards also informed the customer of a complaint from a female customer about the regular customer. The female customer made a complaint to Ms. Rodnell that the male customer was staring at her while fondling himself in the aisles. →

Ms. Edwards informed the male customer of CVS Code of Conduct about sexual harassment and that in the future if the customer violated CVS code of conduct he would be banned from store 10291. The customer became enraged and demanded the name of the Associate who reported him. Ms. Edwards refused to give the Associates name. Ms. Edwards then walked away from the register and told Store Manager Ms. May what ~~took~~ place

13. In the month of June in 2019, shift supervisor, Alyssa Sharpe, told Ms. Edwards what Mr. Saddik said to Ms. Sharpe regarding Ms. Edwards sexual harassment and Ms. Edwards confrontation with the male customer. Mr. Saddik said to Ms. Sharpe that Ms. Edwards should of said nothing to the customer about CVS code of conduct or sexual harassment because the man was a regular customer who bought Boost sports drinks every week.

14. Ms Edwards received a phone call on the store phone from a male advisor from CVS Advice and Counsel on July 8, 2019. The advisor said that the male customer that sexually harassed Ms. Edwards made a complaint that Ms. Edwards accused the customer of sexual assault and banned him from the store. Ms. Edwards told the advisor that this was not true and that she only informed the customer of CVS code of conduct because Ms. Edwards and Ms. Rodnell were sexuall harassed by the male customer with the vulgar sex joke about big breasted women, as well as the complaint of harassment the female customer made to Shenika Rodnell about the customer. The advisor replied "You do know the difference between a joke and sexual assault don't you? Ms. Edwards replied that she does because she was actually sexually assaulted at a previous job and that what the customer did to her and Ms. Rodnell was sexual harassment. The advisor replied "well what do you want us to do about it. Ms. Edwards replied that "What I want you to do is investigate it". The male advisor claimed he would investigate it, but that Ms. Edwards had no right to ban the customer from the store.

15. On or around July 9, 2019. Ms edwards was involved in a volatile altercation with an associate named Samir Mejjout. Ms. Edwards ~~had prevo~~ told Mr. Mejjout CVS's dog policy, which is that only

service dogs are allowed in store. [redacted] Ms. Edwards had been informing all associates that day of CVS's dog policy. When Ms. Edwards told Mr. Mejjout CVS's dog he became enraged and began walking aggressively to Ms. Edwards while shouting at Ms. Edwards "Why are you asking me about the dog policy". This altercation took place behind the registers in front store and was witnessed by Shenika Rodnell and Alyssa Sharpe. Mr. Mejjout never displayed this kind of behavior to male employees. Only female employees.

16. Ms Edwards filed an Ethics Report on July 9, 2019 against Hannah Saddik and Samir Mejjout. The report included Ms. Edwards sexual harassment by the male customer, Mr Saddiks comments about it, Mr. Saddiks violent comment in January 2019 about the female customer, and the altercation with Samir Mejjout and instances involving female associates that Mr. Saddik and Mr. Mejjout discriminated against female associates and created a hostile work environment for female employees

17. CVS advice and counsel sent an email to Ms Edwards that an investigation on her report had begun on July 11, 2019

18. On August 6 2019 Ms. Edwards received an email that her claims were unsubstantiated, that the case was closed and no further action would be taken. This was done without speaking to Ms. Edwards or all the witnesses she listed in her report.

19. Ms. Edwards on or about September 5, 2019 received a level 2 write up for the altercation with Samir Mejjout Ms. Edwards is given 3 weeks probation and cant transfer

20. On December 5, 2019 Cornelius (Andy) Yearwood the District Manager informs Ms. Edwards shes being transferred and demoted to part time shift supervisor

21 On or about Ms. Edwards request a leave of absence to receive treatment for depression and anxiety to start January 2, 2020 and end March 4, 200.

22 Ms. Edwards is approved for medical leave on January 2, 2020

23. Ms Edwards is terminated on January 6, 2020.

The Defendants discriminated against Ms. Edwards by allowing her to continually be sexually harassed by a regular male customer, subjecting Ms. Edwards to a hostile work environment based on her sex and/or gender, retaliating against Ms. Edwards by giving her a level 2 write up, transferring her, demoting her to a part time position, terminating Ms. Edwards wrongfully as retaliation for reporting illegal acts and not accomodating Ms. Edwards disability by firing Ms. Edwards while she was on medical leave.

JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by jury.

PRAYER FOR RELIEF

A. Declare that the acts and practices complained of herein are unlawful and violate NYSHRL and NYCHRL

B. Direct Defendant to pay plaintiff back wages

C. Direct Defendant to pay plaintiff punitive damages in amount determined at trial

D. Award such additional relief as justice may require

Dated: 1/6/2023

[sign your name]

ALLISON EDWARDS

[print your name]

205 W 135TH ST NEW YORK, NY 10030

[your address]

917-371-1891

[your telephone number]

State of New Yor'· VERIFICATION
County o· New Yo.

STATE OF NEW YORK
COUNTY OF New York ss:

Allison Edwards, being duly sworn, deposes and says:
I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

[sign your name in front of a Notary]

ALLISON EDWARDS

[print your name]

Sworn to before me this
____ day of JAN 0 6 2023, 20____

Notary Public

Toni Incorvaia
Notary Public, State of New York
Reg. No. 04IN6435975
Qualified in New York County
Commission Expires July 5, 2026



Printed 1/20

**[Litigation back: Fill out right side of form only]**

****************NOTICE OF ENTRY******************

Sir/Madam:

Please take notice that the within is a (certified) true copy of a

_________________ duly entered in the office of the clerk of

the within named court on the ___ day of ____________, 20___

Dated: Yours, etc.

Attorney for: _______________________

_______________________ Office and Post

_______________________ Office Address

_______________________

To:

Attorney(s) for _______________________________

***************NOTICE OF SETTLEMENT***************

Sir/Madam:

Please take notice that an ___________________________

of which the within is a true copy will be presented for settlement to the Hon. _______________________, one of the Justices of the within court, at ______________________________, on _____________________, 20___ at _________ AM/PM.

Dated: ________________, 20___ Yours, etc.

Presenting Party ________________________________

________________________________

________________________________

To: ________________________________

Attorney(s) for ________________________________

________________________________

CommenceAction – Rev. May 2022

INDEX NUMBER 100023-

SUPREME COURT OF THE STATE C

COUNTY OF NEW YORK

In the Matter of the Application of

Allis

- against -

CVS Health Cor

To the best of my knowledge, in after an inquiry reasonable under the cir of these papers and the contentions ther defined in subsection (c) of section 130 Administrator (22NYCRR).

Sign Name: [signature]

Print Name: Allison Edwards

Address: 205 W 135th

Telephone: 917-371-1891

abc4bk@gmail.com

Service of a copy of the within is hereby

Dated: ______________________

Attorney for ______________________

Printed 1/20/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X

ALLISON EDWARDS,

Plaintiff,

-against-

CVS HEALTH CORPORATION,

Defendant.

-----------------------------------------------------------------X

Index No.: 100023/2023

**AMENDED VERIFIED COMPLAINT**

Plaintiff **ALLISON EDWARDS** ("Plaintiff" or "Edwards"), by her attorneys, **MADUEGBUNA COOPER, LLP**, for her complaint alleges:

## I. THE NATURE OF THIS ACTION

1. Edwards, a young Black woman working at the largest United States pharmacy chain, was forced to endure sexist and discriminatory treatment by a customer and supervisor.

2. This unlawful conduct was ignored by CVS HEALTH CORPORATION ("CVS") and its employees responsible for protecting employees from such unlawful treatment.

3. Rather than seriously investigate Edwards' complaints of sex discrimination and a hostile work environment, CVS closed the complaint without even interviewing Edwards and most of her witnesses.

4. Weeks after she complained, Edwards was issued a retaliatory write-up and three weeks' probation. Incredibly, she was disciplined for engaging in protected activity, the very definition of retaliation.

5. CVS protected its male employees and ultimately terminated Edwards in January 2020 when she was on medical leave caused by the company's own failure to protect her.

6. As a result, Edwards brings this action for declaratory judgment and money

damages to remedy discrimination, retaliation and hostile work environment on the basis of sex and disability under the New York City Human Rights Law, as contained in the Administrative Code of the City of New York, § 8-107, *et seq.* ("NYCHRL").

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to the New York Civil Practice Law & Rules ("CPLR") and the NYCHRL pleaded herein.

8. Venue is proper under CPLR § 503(a) because at least one of the parties to this action resided or had its principal office in New York County at the time of the commencement of this action. Additionally, causes of action that are the subject of this lawsuit arose in this County.

## III. PROCEDURAL REQUIREMENTS

9. After filing this action, Edwards will serve a copy of the complaint on the New York City Commission of Human Rights and the Corporation Counsel of the City of New York, in accordance with New York City Administrative Code Section 8-502(c).

## IV. PARTIES

10. Edwards is a 35-year-old Black female.

11. From April 2018 to January 2020, Edwards was continuously employed by CVS, working as a full-time shift supervisor then, after her unlawful demotion in December 2019, as a part-time shift supervisor.

12. Defendant CVS is a domestic New York corporation, authorized to transact business within the City and State of New York.

13. At all relevant times, Defendant CVS owned and operated retail stores and pharmacies, including Store 10291 located at 1601 Kings Highway, Brooklyn, NY 11229.

## V. FACTS COMMON TO ALL CAUSES OF ACTION

*Edwards' History with CVS:*

14. On April 2, 2018, Edwards interviewed with Training Store Manager Kevin Goldstein for both the Beauty Advisor and Shift Supervisor (Beauty Quadrant) positions.

15. Edwards, who had a valid cosmetology license, was convinced by Mr. Goldstein to accept the Shift Supervisor position because the pay was higher, had more opportunities for advancement and she could go to trade shows, which Edwards later learned was false.

16. On April 18, 2018, Edwards began working as a full time Shift Supervisor for CVS Store 2441 at 2151 86th Street, Brooklyn, New York 11214.

17. After a few months, Edwards received a merit increase of seven cents per hour.

18. In December 2018, Edwards interviewed with Ekaterina (Kate) May ("May"), the Store Manager of CVS Store 10291, located at 1601 Kings Highway, Brooklyn, New York 11229 ("Store 10291"), for a Beauty Advisor position that involved special training in line with Edwards' cosmetology background.

19. May told Edwards that she preferred someone who spoke Russian and instead hired Edwards as a full time Shift Supervisor.

20. On January 1, 2019, Edwards transferred to Store 10291 under May's supervision.

*Edwards Faces Harassment:*

21. As Shift Supervisor in Store 10291, Edwards was supervised by Operations Manager Hanna (John) Saddik ("Saddik").

22. On her first day on or around January 1, 2019, Saddik told Edwards to help a female customer "because if I go, I'll punch her in the face." Edwards was shocked by and afraid of Saddik's violent threat and went to help the customer.

23. In February 2019, Edwards called Saddik for help during a closing shift. Rather than assist Edwards so staff did not have to stay longer, Saddik was upset and insinuated that Edwards was stupid for needing help.

24. In light of these two incidents, Edwards complained to May about Saddik, including other female employees' complaints that he treated them worse than male employees.

25. May laughed off Saddik's violent threat against the female customer and had no meaningful response to the complaints of the female employees.

*Edwards is Sexually Harassed by a Male CVS Customer:*

26. In April 2019, a regular male customer of Store 10291 sexually harassed Edwards after she rang him up.

27. The customer told Edwards a sexually explicit joke and openly stared at her chest.

28. Edwards, feeling uncomfortable and harassed, told the customer that she did not like jokes of that nature.

29. Two months later, the same customer came back. When Edwards pointed him out to a co-worker, Associate Sheneka Rodnell ("Rodnell"), and said that the customer had sexually harassed her with a vulgar joke, Rodnell admitted that the customer made the same joke to her and stared at her chest.

30. Rodnell also told Edwards that a female customer had complained to her about the male customer staring at her in the aisles and fondling himself.

31. A week later, the male customer came back during Edwards' shift. After he was checked out by Associate Imran Nasir, he went to the register Edwards was operating, stared at her chest again and tried to tell another joke.

32. Edwards told him she did not want to hear jokes of that nature, and that another employee and customer had complained about him making them uncomfortable.

33. When Edwards, in an attempt to persuade the customer to moderate his behavior and protect staff and customers, informed him of the CVS Code of Conduct and that if he continued to violate it, he would be banned, the customer became enraged and demanded to know the name of the Associate who complained.

34. Edwards refused and walked away to inform May what happened.

35. Another female Associate, Alyssa Sharpe ("Sharpe"), informed Edwards that Saddik was unhappy and that Edwards should not have mentioned the Code of Conduct because the customer was a regular.

36. On June 17, 2019, since Saddik would not protect employees, Edwards, with the encouragement of May, drafted a statement about the sexual harassment to protect herself.

*Edwards Files a Complaint of Sex Discrimination and Hostile Work Environment with CVS:*

37. On July 8, 2019, Edwards received a call on the store phone from a male advisor from CVS Advice and Counsel, who said the male customer complained that she accused him of sexual assault and banned him from the store.

38. Edwards denied that she told the customer that and replied that she only informed him of the Code of Conduct because both she and Rodnell had been sexually harassed.

39. Rather than take Edwards' and Rodnell's complaints seriously, the CVS advisor insultingly asked, "You do know the difference between a joke and sexual assault, don't you?"

40. When the advisor asked what she wanted him to do about it, Edwards said she wanted him to investigate. Although the investigator said he would, he also claimed that Edwards had no right to ban the customer from the store.

41. On July 9, Edwards was advising all employees of the store's service dog policy. A male Associate named Samir Mejjout ("Mejjout") walked toward her aggressively and shouted, "Why are you asking me about the dog policy?"

42. Mejjout did not stop shouting at Edwards until he saw May approaching.

43. Mejjout, with the tacit approval of Saddik, was permitted to be rude and aggressive to only female co-workers, with no repercussions.

44. Later that day, Edwards filed an Ethics Report with CVS alleging sex discrimination and hostile work environment against Saddik and Mejjout.

45. The report included her complaints about her sexual assault by the male customer; Saddik's uncaring comments concerning the incident and his threat to batter a female customer; the altercation with Mejjout; and Saddik and Mejjout discriminating against female Associates and creating a hostile work environment.

46. Edwards listed the "general nature of this matter" as "a culture of harassment, and disrespect towards female employees, has taken root at this store. I believe the main person that lead to this culture taking place is Hanna Saddik, my operational supervisor."

47. Edwards also included Rodnell's report that, during a closing shift when she repeatedly called for backup, neither Mejjout nor Saddik came to the front. When Rodnell found them in the aisles, she overheard Saddik tell Mejjout, "When women are here, men don't have to come to the front."

48. Edwards named Rodnell, Sharpe and another female Associate, Roxsanna Khan ("Khan"), as witnesses.

49. On July 11, 2019, Camile Esianor ("Esianor"), Senior Advisor from CVS Advice and Counsel, emailed Edwards that an investigation had been opened into her Ethics Report.

50. On August 6, Esianor emailed that Edwards' claims were unsubstantiated and no further action would be taken.

51. When Edwards asked Rodnell, Sharpe and Khan whether Esianor had interviewed them, Sharpe confirmed that she had spoken to Esianor and corroborated the claims in the report.

52. However, Esianor had only reached out to Rodnell and Khan once, and even though they followed-up with her, Eisnaor never got in touch with either of them again.

53. On August 8, Edwards spoke with another CVS Advice and Counsel employee to find out why her case was closed without being interviewed herself, which the employee admitted was strange.

54. Later in August, Edwards learned from Sharpe of another sexist incident in Store 10291. When Saddik was speaking with a male Shift Supervisor, Khan requested help with a customer and Saddik responded, "When you see two men talking, be quiet."

*Edwards is Retaliated Against for Engaging in Protected Activity and Suspended*:

55. On September 5, 2019, weeks after CVS closed her complaint, May called Edwards into her office, with Saddik and Pharmacy Manager Roza Gavrilova.

56. May asked Edwards if she had filed a report against Mejjout, which she confirmed.

57. May then read from a document that disciplinary actions would be taken against Edwards.

58. Edwards asked multiple times if she was being disciplined for the report she made and if CVS Advice and Counsel had investigated and found her in the wrong, to which May confirmed and gave Edwards a Level 2 write-up.

59. Recognizing that she was being retaliated against for protected activity, Edwards refused to sign the disciplinary papers and was given three weeks' probation.

60. On September 9, Edwards called CVS's Ethics line and was told that her case had been reopened but received no further details.

61. On October 23, Edwards emailed Region Director, Eueal Dagne-Nure ("Dagne-Nure"), to complain about race and gender discrimination and hostile work environment at Store 10291.

62. In November 2019, Edwards met with District Manager Andy Yearwood ("Yearwood") and Regional Loss Prevention Manager Abdul Saliu about the issues she reported to Dagne-Nure. When Edwards raised sexual harassment, they both claimed it was the first time they were hearing about sexual harassment in Store 10291.

63. Similarly, when Edwards spoke with Director of Employee Investigations Sheila Whitaker ("Whitaker") about her complaints, she also claimed not to have heard about sexual harassment in the store before.

64. Yet, Edwards had clearly complained about sex discrimination and harassment in her July 9, 2019 complaint that was declared unsubstantiated.

65. In November or December 2019, Whitaker advised Edwards that all of her claims had been investigated and none were substantiated.

*Edwards is Demoted and Transferred to Another CVS Store:*

66. On December 5, 2019, Yearwood told Edwards that she was being transferred and demoted to part time Shift Supervisor at CVS Store 802, located at 2320 Ralph Avenue, Brooklyn, New York 11234 ("Store 802") as a result of the investigations into her complaints.

67. Yearwood also falsely told Edwards that nothing she reported was based on fact, admitting that she was being demoted and transferred in retaliation for her discrimination complaints.

68. On December 17, Edwards began working at Store 802, where she was left a voicemail from Whitaker hoping that the transfer was an acceptable solution for some of her concerns.

69. Edwards had never requested a transfer, only a thorough investigation into her discrimination complaints and appropriate action. Instead, she was retaliated against.

*Edwards Requests a Leave of Medical Absence and is Fired:*

70. In December 2019, as a result of the stress from CVS's failure to address discrimination, Edwards requested medical leave until March 4, 2020.

71. On January 2, 2020, CVS approved the request effective that day and Edwards was told not to report to work until March 4.

72. In her Family Medical Leave Act certification papers, Edwards' doctor wrote that she was experiencing depressive and anxiety symptoms and was in need of crisis intervention.

73. Her doctor also listed the reason that Edwards could not work as "being triggered by her place of employment."

74. In February 2020, Edwards requested to extend her medical leave until May 2020.

75. On May 18, 2020, CVS Ethics emailed Edwards that her case had been fully investigated and appropriate action had been taken.

76. On May 22, 2020, when she called CVS HR to ask about a transfer outside her district, Edwards was informed that she had been terminated on January 6, 2020 and a letter had been mailed to her on May 19.

77. This was the first time Edwards heard she had been terminated from CVS.

78. When Edwards finally received the letter on or around May 22, it was dated May 18 and gave no reason for her termination.

79. Edwards was terminated in retaliation for taking medical leave in violation of the CVS Code of Conduct and its provisions prohibiting discrimination in violation of the Americans with Disabilities Act.

80. As a proximate result of CVS's discriminatory conduct towards Edwards, she has suffered and continues to suffer monetary loss and damages, including the loss of past and future earnings, and other employment benefits.

81. As a further proximate result of CVS's actions, Edwards has been placed under the care of physicians due to elevated stress levels, severe emotional distress, lasting embarrassment, humiliation and anguish, as well as other incidental and consequential damages and expenses.

82. CVS's conduct was willful and wanton negligence and/or reckless, and a conscious disregard for her rights, thereby entitling her to punitive damages under the NYCHRL.

83. Edwards has no complete, plain, clear or adequate remedy at law.

**FIRST COUNT AGAINST CVS**
**(Sex Discrimination in Violation of the NYCHRL)**

84. Edwards repeats and realleges each allegation in each numbered paragraph above.

85. At all relevant times, Edwards was an "employee" under the NYCHRL.

86. CVS subjected Edwards to differential terms and conditions of employment because of her sex.

87. CVS subjected Edwards to adverse actions because of her sex by:

a. Treating Edwards less well than male employees, including by implying she was stupid, threatening to batter a female customer and advising Edwards that she committed misconduct by following the Code of Conduct;

b. Permitting male employees of Store 10291, particularly Saddik and Mejjout, to treat female employees in a discriminatory manner;

c. Failing to address Edwards' complaints about Saddik, Mejjout and a lewd male customer;

d. Giving Edwards a Level 2 write-up and three weeks' probation;

e. Demoting Edwards and transferring her to Store 802; and,

f. Terminating Edwards.

88. CVS took these actions against Edwards on account of her sex.

89. CVS treated Edwards less well because of her sex.

90. By treating her less well because of her sex, CVS violated the NYCHRL.

91. As a result, Edwards has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SECOND COUNT AGAINST CVS**
**(Disability Discrimination in Violation of the NYCHRL)**

92. Edwards repeats and realleges each allegation in each numbered paragraph above.

93. CVS subjected Edwards to differential terms and conditions of employment because of her disability.

94. Specifically, CVS subjected Edwards to adverse actions because of her disability by terminating her employment while she was on an approved medical leave.

95. CVS took these actions on account of her disability and need for medical leave.

96. CVS treated Edwards less well because of her disability and medical leave.

97. By treating her less well because of her disability and medical leave, CVS violated the NYCHRL.

98. As a result, Edwards has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**THIRD COUNT AGAINST CVS**
**(Retaliation in Violation of NYCHRL)**

99. Edwards repeats and realleges each allegation in each numbered paragraph above.

100. CVS issuing Edwards a Level 2 write-up and three weeks' probation, a demotion, transfer and termination were retaliation for her complaints about sex discrimination and violated her rights under the NYCHRL.

101. All the various actions taken by CVS against Edwards after she complained of discrimination constitute unlawful retaliation in violation of the NYCHRL.

102. As a result, Edwards has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**FOURTH COUNT AGAINST CVS**
**(Hostile Work Environment based on Sex in Violation of the NYCHRL)**

103. Edwards repeats and realleges each allegation in each numbered paragraph above.

104. CVS engaged in a continuing pattern of conduct that unreasonably interfered with Edwards' work performance and created an intimidating, hostile or offensive work environment that harmed Edwards.

105. By subjecting Edwards to continuing acts of harassment, discrimination and a hostile work environment because of her sex, CVS violated the NYCHRL.

106. As a result, Edwards has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**PUNITIVE DAMAGES**

107. Edwards claims punitive damages against CVS under the NYCHRL.

**WHEREFORE,** Edwards prays that this Court grant her judgment containing the following relief:

a. Impanel a jury to hear Edwards's claims;

b. Award damages in an amount to be determined at trial to compensate Edwards for her monetary loss and damages, including her loss of past and future earnings, bonuses, compensation, and other employment benefits;

c. Award damages to compensate Edwards for mental anguish, humiliation, embarrassment, and emotional injury under the NYCHRL;

d. Award of damages in an amount to be determined at trial to compensate Edwards for violating her rights under the NYCHRL;

e. Award punitive damages to be determined at trial for the claims under the NYCHRL;

f. Award reasonable attorneys' fees and costs related to Edwards' claims under the NYCHRL; and,

g. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 12, 2023

Respectfully Submitted,

SAMUEL O. MADUEGBUNA, ESQ.
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff, Allison Edwards
30 Wall Street, 8th Floor
New York, New York 10005
(212) 232-0155

TO: CVS HEALTH CORPORATION
One CVS Drive
Woonsocket, Rhode Island 02895

**VERIFICATION**

STATE OF NEW YORK )
)
COUNTY OF NEW YORK ) SS.

**ALLISON EDWARDS,** being duly sworn, deposes and says:

I have read the foregoing **AMENDED VERIFIED COMPLAINT** and know the contents thereof, the same are true to my own knowledge except those matters alleged to be upon information and belief, and as to those matters, I believe them to be true. The source of my knowledge and the grounds for my belief are investigations conducted by my attorneys and facts, records, and other pertinent information contained in my personal files.

**ALLISON EDWARDS**

SWORN to before me this
12th day of April 2023

SAMUEL O. MADUEGBUNA
Notary Public, State of New York
Reg. No. 02MA50471194
Qualified in Westchester County
Commission Expires October 25, 2025

*SUPREME COURT OF THE STATE OF NEW YORK*
*COUNTY OF NEW YORK* *Index No.: 100023/2023*

---

*ALLISON EDWARDS,*

*Plaintiff,*

*-against-*

*CVS HEALTH CORPORATION,*

*Defendant.*

---

*AMENDED VERIFIED COMPLAINT*

---

*Signature (Rule 130-1.1-a)*

________________________________________

*Print name beneath*
*SAMUEL O. MADUEGBUNA, ESQ.*

---

*Yours, etc.*

*MADUEGBUNA COOPER LLP*
*Attorneys for Plaintiff*
*30 Wall Street, 8th Floor*
*New York, New York 10005*
*(212) 232- 0155*

*To: All Counsel of Record*

---

*Service of the within is hereby admitted on*

__________________________

*Attorneys for*

# EXHIBIT B

UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALLISON EDWARDS,<br><br>Plaintiff,<br><br>-against-<br><br>CVS HEALTH CORPORATION,<br><br>Defendant. | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | Civil Action No. 23-cv-4340 |

**DECLARATION OF MELANIE ST. ANGELO IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1746, Melanie K. St. Angelo declares as follows:

1. I am currently an Assistant Secretary for CVS Pharmacy, Inc. I am submitting this declaration in support of Defendant's Notice of Removal. I have personal knowledge of the facts set forth below, or knowledge based upon review of corporate records maintained in the regular course of the company's business. I am over the age of eighteen years old and am competent to testify to the facts set forth below.

2. As an Assistant Secretary for CVS Pharmacy, Inc., I am familiar with the organizational structure and general operations of Defendant CVS Health Corporation.

3. CVS Health Corporation is a corporation organized under the laws of the state of Delaware.

4. CVS Health Corporation's principal place of business is located in Woonsocket, Rhode Island. Its headquarters, including its principal executive and administrative offices, are located in Woonsocket, Rhode Island and have been since before the filing of this lawsuit. The majority of CVS Health Corporation's corporate officers and senior executives whom direct,

control, and coordinate its operations are also located at its corporate headquarters in Woonsocket, Rhode Island. As a result, nearly all of CVS Health Corporation's corporate decisions are made in Rhode Island, including operational, executive, administrative, and policymaking decisions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of May, 2023.

MELANIE K. ST. ANGELO

4885-9557-7445.1 / 090142-1436