UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

ALLISON EDWARDS,

                    Plaintiff,

   -against-                                    1:23-cv-04340 (CM)

CVS HEALTH CORPORATION,

                    Defendant.

-----------------------------------------------------------x

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION PENDING ARBITRATION AND DENYING PLAINTIFF'S CROSS MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AND FOR AN ORDER REMANDING THIS CASE TO THE STATE COURT**

McMahon, J.:

Plaintiff Allison Edwards worked for Defendant CVS Health Corporation ("CVS") in Brooklyn, New York from April 2018 until January 2020. In an Amended Complaint originally filed in the New York State Supreme Court, Edwards asserted claims for sex and disability discrimination, harassment and retaliation, all in violation of the New York City Human Rights Law. *See* Am. Compl. attached to Def.'s Notice of Removal (ECF No. 1 at 17-29) ("Compl."). The acts of discrimination complained of all took place prior to January 2020, when Plaintiff was fired by her employer. Although her claims arise under New York City municipal law, the Plaintiff and Defendant are completely diverse, so the matter was removed by CVS to this court.

CVS now moves to dismiss this case or stay it pending arbitration. In April 2018, Plaintiff entered into an agreement to arbitrate all workplace legal disputes – an agreement expressly governed by and subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*

This agreement requires her to arbitrate all claims "arising out of or related to" her employment at CVS. Plaintiff had the opportunity to "opt out" of the arbitration agreement during a 30-day window, but she did not do so and she continued working for CVS thereafter.

Plaintiff does not disagree that she signed and is bound by an arbitration agreement between her and CVS. However, given the nature of her claims, Plaintiff believes that she is not required to arbitrate her claims against CVS. Specifically, she argues that the Ending Forced Arbitration of Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401-02, which applies to all claims of sexual harassment that arise or accrue on or after March 3, 2022 – prior to the commencement of her lawsuit –vitiates the arbitration clause in this instance.[1]

However, the statute invoked by Plaintiff applies by its terms to conduct committed after the law's effective date, March 3, 2022. The date on which Plaintiff commenced her lawsuit is irrelevant. Because the conduct complained of was completed by January 2020, when Plaintiff last worked at CVS, the EFAA does not apply to her claims, and she is bound by the arbitration agreement she signed and then declined to reject. Therefore, the Court grants CVS' motion for a stay pending arbitration and enters an order compelling Plaintiff to arbitrate her claims.

In an effort to avoid this fate, Plaintiff has cross moved for leave to file a second amended complaint that would add two new defendants to the case – local CVS managers whose presence would destroy diversity and compel remand of the case to the New York State Supreme Court. That motion is denied, for two reasons.

---

[1] The EFAA provides that "at the election of [a] person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment." 9 U.S.C. § 402(a).

First, despite her importuning, it is perfectly obvious that the reason for Plaintiff's belated decision to sue the two managers individually is to destroy diversity and get this case out of federal court – which is reason enough to deny the motion. Second, the arbitration clause to which Plaintiff is subject includes claims against CVS employees as well as CVS itself, so adding them as defendants would indeed be futile to Plaintiff's effort to get this matter adjudicated in a court of law as opposed to an arbitral forum.

## STATEMENT OF FACTS

### I. The Claims in Suit

According to her Complaint, Plaintiff was hired and employed by CVS as a Shift Supervisor at a CVS located in Brooklyn, NY, in April 2018. *See* Compl. ¶ 11.

During the course of her employment Plaintiff alleges that she was harassed by two fellow employees at CVS – Andy Yearwood, who held the position of District Manager, and Hanna Saddik, who was Operations Manager at Plaintiff's store. *Id.* ¶¶ 21, 62. Plaintiff claims that on her first day working for CVS, Saddik expressed to her a desire to use physical violence on a female customer. *Id.* ¶ 22. Later, when a male customer made sexually inappropriate comments to Plaintiff, Saddik allegedly "would not protect" Plaintiff or other employees. *Id.* ¶¶ 26-36. In general, the Complaint details a culture of disrespect towards female employees, which Plaintiff claims Saddik expressly and tacitly endorsed. *Id.* ¶¶ 23-24, 41-43, 45-47, 54. She complained to CVS management about these incidents in June, July, and October 2019. *Id.* ¶¶ 36, 44, 61. She received no response until December 5, 2019, when Yearwood told Plaintiff she was being transferred and demoted, purportedly in retaliation for her complaints. *Id.* ¶¶ 60, 64, 66-67.

Due to the stress caused by these instances, Plaintiff requested medical leave beginning in January 2020 and extending through May 2020. *Id.* ¶¶ 70-74. Plaintiff alleges that CVS told her that her employment was terminated in May 2020, shortly after the beginning of the COVID pandemic. *Id.* ¶¶ 76-78.

Plaintiff filed her original complaint against CVS in the Supreme Court, New York County, on January 9, 2023. She amended her complaint on April 12, 2023.

## II.     The Arbitration Agreement

CVS has "Arbitration Agreements," pursuant to which CVS and participating employees waive the right to pursue employment-related claims in court and agree to submit such disputes to binding arbitration. *See* Decl. of Thomas Schofield ("Schofield Decl.") (ECF No. 15) ¶ 4. Employees are asked to sign this agreement during the onboarding process through the online application called "StarSource." *Id.* ¶ 5. Plaintiff signed her arbitration agreement ("Arbitration Agreement" or "Agreement") on April 10, 2018. *Id.* ¶ 6, Ex. 1.

The Arbitration Agreement between Plaintiff and CVS states, in pertinent part:

> 1. **Mutual Agreement to Arbitrate Claims.** The employee named below will be referred to here as "Employee," "You" or "Your". CVS Pharmacy, Inc. including its affiliates, successors, subsidiaries and/or parent companies will be referred to here as "CVS" or "Company". Under this Agreement, You and CVS agree that any dispute between You and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.
>
> 2. **Claims Covered by this Agreement.** Except as otherwise stated in this Agreement, *Covered Claims are any and all claims, disputes or controversies that CVS may have, now or in the future, against You or that You may have, now or in the future, against CVS, or one of its employees or agents, arising out of or related to Your employment with CVS or the termination of Your employment.* Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and

        rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA"), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment. Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement, except as provided in the section below regarding the Class Action Waiver.

    7.    **Your Right to Opt Out of Arbitration.** Arbitration is not a mandatory condition of Your employment at CVS. If You wish, You can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms. To opt out, You must mail a written, signed and dated letter stating clearly that You wish to opt out of this Agreement to CVS Health, P.O. Box 969, Woonsocket, RI 02895. <u>In order to be effective, Your opt out notice must be postmarked no later than 30 days after the date you agree to the Agreement below.</u>

    8.f.    **Non-Retaliation.** It is against CVS policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement or to challenge this Agreement. If You believe that You have been retaliated against, You should immediately report the issue to the CVS Human Resources Department or Ethics Line. This Agreement does not in any way alter the at-will employment status between You and CVS.

*Id.* Ex. 1 (Emphasis added).

Plaintiff did not opt out of the Arbitration Agreement, and continued working thereafter. *Id.* ¶ 10.

### III.    Plaintiff's Employment Claims Against CVS

Despite agreeing to arbitration, Plaintiff filed a pro se Complaint against CVS in the Supreme Court of the State of New York on January 9, 2023. *See* Pro Se Compl. attached to Def.'s Notice of Removal (ECF No. 1 at 8-16). Counsel then filed an Amended Complaint in the same court on or about April 12, 2023. Plaintiff alleges sex and disability discrimination, harassment and retaliation in violation of the New York City Human Rights Law. These claims clearly arise

out of Plaintiff's employment with CVS and, therefore, fall within the scope of the parties' Arbitration Agreement.

Because Plaintiff is a citizen of the State of New York and CVS is a Delaware corporation with its principal place of business in Woonsocket, Rhode Island, there is complete diversity between the Plaintiff and the only Defendant she and her attorney chose to sue. As a result, CVS removed the case to this Court on May 24, 2023. *See* Def.'s Notice of Removal (ECF No. 1).

Prior to the filing of this motion, on June 14, 2023, Plaintiff's counsel was provided with a copy of the Arbitration Agreement, and was asked to proceed to arbitration. Declaration of I. Michael Kessel (ECF No. 14) ¶ 4. On June 25, Plaintiff's counsel advised that he would not withdraw the Complaint in favor of pursuing arbitration per the terms of the parties' Arbitration Agreement. *Id.*

On June 30, 2023, CVS filed a motion to dismiss or stay and compel arbitration. *See* Def.'s Mot. Dismiss (ECF No. 12). On August 14, 2023, Edwards filed a cross motion for leave to file a second amended complaint to add two CVS managers – both New Yorkers – and to remand the case to the New York State Supreme Court for want of diversity. *See* Pl.'s Cross Mot. Leave File Second Am. Compl. (ECF No. 18).

## ARGUMENT

### I. The Agreement is Governed by the Federal Arbitration Act

Arbitration agreements are governed by the FAA. *See* 9 U.S.C. § 1, *et seq*. The FAA mandates that courts compel arbitration of claims that parties have agreed to arbitrate. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018); *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 338-39 (2011). The FAA requires courts "to respect and enforce the parties' chosen arbitration procedures," and "'rigorously' . . . 'enforce arbitration agreements according to their terms . . . .'"

*Epic Sys. Corp.*, 584 U.S. at 506 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

Section 4 of the FAA "directs a federal court to order parties to proceed to arbitration if there has been a failure, neglect, or refusal of any party to honor an agreement to arbitrate." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal citations omitted); 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Agreement is indisputably governed by the FAA. It expressly states that "this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce." *See* Schofield Decl., Ex. 1 ¶ 8(d). Moreover, it arises out of the employment context and, thus, affects commerce sufficient for the FAA to apply. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (determining that the FAA broadly applies to employment contracts).

## II. CVS' Motion to Compel Arbitration is Granted

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218.

In determining whether claims must be arbitrated pursuant to an arbitration agreement, this Court must determine: (1) whether the parties entered into an agreement to arbitrate; (2) the scope of that agreement; and (3) if some, but not all, claims are subject to arbitration, whether to stay the

balance of the proceedings pending arbitration. *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008); *see also PacifiCare Health Sys. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).[2] As discussed in detail below, all of Plaintiff's employment-related claims fall squarely within the scope of the valid agreement to arbitrate between the parties. Thus, this Court must compel Plaintiff to arbitrate her claims.

### A. The Parties Entered into a Valid Agreement to Arbitrate

Whether parties agreed to arbitrate a dispute is governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004). Plaintiff's claims should be referred to arbitration because the Agreement is a binding agreement under state law principles. Plaintiff expressly and unequivocally affirmed, with her signature, to arbitrate all claims arising out of her employment, including claims of discrimination, retaliation and harassment. *See* Schofield Decl. Ex. 1.

Courts look to the relevant state law of contracts when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *Kaplan*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). Under New York law, a contract may be formed by words or by conduct that demonstrate the parties' mutual assent. *See, e.g., Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 582 (2d Cir. 2006). The elements of offer, acceptance, and mutual assent are easily satisfied here. CVS made an offer to Plaintiff to enter into an Arbitration Agreement during

---

[2] In addition, the Second Circuit also considers whether Congress intended any federal statutory claims at issue to be non-arbitrable. *Daly v. Citygroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019). However, Plaintiff asserts no federal claims in her complaint.

Plaintiff's hiring process, and Plaintiff accepted that offer by reviewing and signing the Arbitration Agreement.

By signing the Agreement, Plaintiff attested to the fact that she had read, understood, and agreed to be legally bound by the terms set forth therein. Schofield Decl. Ex. 1 ¶ 9.

Unlike many arbitration agreements between employer and employee, this agreement provides employees with an "opt out" – it clearly states that agreeing to arbitration is not a condition of employment and gives an employee 30 days to send a notice opting out of arbitration. Plaintiff does not dispute that she failed to mail an "opt out" letter to CVS within 30 days of signing it. This failure to opt out cemented Plaintiff's intent to be bound by the Arbitration Agreement. *See Pelligrino v. Morgan Stanley Smith Barney LLC*, No. 17-cv-7865 (RA), 2018 WL 2452768, at *3 (S.D.N.Y. May 31, 2018) (facts that plaintiff received arbitration agreement by email, and failed to opt out, "compel the conclusion that Plaintiff is bound by the Arbitration Agreement").

I thus conclude that Plaintiff and CVS formed a binding agreement to arbitrate all employment related claims, and Plaintiff must be compelled to arbitrate her claims.

### B. The Scope of the Agreement Encompasses Plaintiff's Claims

Plaintiff's claims of discrimination, harassment, and retaliation under the NYCHRL plainly fall within the scope of the Arbitration Agreement. Where, as here, there is a valid and enforceable agreement to arbitrate, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Local Union 97, Int'l Bhd. Of Elec. Workers v. Niagra Mohawk Power Corp.*, 67 F.4th 107, 112-13 (2d Cir. 2023) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)). In other words, "a party cannot be required to submit to arbitration any dispute which it has not agreed to submit." *Id.* (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015)). Because the Arbitration

Agreement expressly provides for arbitration of claims for discrimination, retaliation, and harassment, Plaintiff's claims fall within the scope of the Arbitration Agreement.

Here, the Arbitration Agreement expressly states that, except as otherwise noted, the agreement covers "any and all legal claims, disputes, or controversies" that Plaintiff may have with CVS or its employees "arising out of [her] employment with CVS or the termination of [her] employment." This specifically includes claims of "harassment, discrimination, retaliation and termination." *See* Schofield Decl. ¶ 7, Ex. 1 ¶¶ 1, 2. Plaintiff's claims for discrimination, retaliation and harassment in the Complaint fall within the claims covered by the Agreement, and are, therefore, subject to arbitration. *See* Compl. ¶¶ 84-106. The factual allegations in the Complaint are based on alleged conduct arising out of or relating to Plaintiff's employment with CVS. *See New York v. Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996) ("[I]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted.") (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)). Thus, the language of the Agreement covers all of Plaintiff's various factual allegations and legal claims.

### C. The Ending Forced Arbitration of Sexual Harassment Act Is <u>Not</u> Applicable to This Case Because Plaintiff's Claims Accrued Before Its Enactment Date.

Plaintiff in her Complaint alleges hostile work environment/harassment in violation of the NYCHRL. Compl. at 12, Fourth Count. While the EFAA prohibits the enforcement of forced arbitration clauses in employment agreements for claims of sexual harassment, it also clearly states that it only applies to a "dispute or claim that arises or accrues ***on or after*** the date of enactment of this Act." Pub. L. No. 117-90, Section 3 (emphasis added). As such, the law only applies to those claims that arise on or after March 3, 2022 – the date of enactment of the EFAA. Since Plaintiff's last day of work at CVS was January 2, 2020 and she was fired in May 2020, *see*

Complaint ¶¶ 71, 76, her claims in the Complaint – which are predicated on her termination from CVS and on conduct that allegedly occurred prior thereto – are not covered by the EFAA, and are not precluded from arbitration by the EFAA.

Case law in the Second Circuit makes clear that the EFAA applies only to claims that accrued on or after March 3, 2022 (i.e., the day President Biden signed the EFAA into law) and that the EFAA does not have retroactive effect. *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 550 (S.D.N.Y. 2023) ("The EFAA applies only to claims that accrued on or after March 3, 2022, the day President Biden signed the EFAA into law; it does not have retroactive effect.") (collecting cases); *Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022) ("Walters's claims in this lawsuit are not covered by [the EFAA] because each claim arose or accrued before March 3, 2022. Each of Walters's claims accrued at the time she experienced discrimination, harassment, or retaliation, and at the latest by December of 2021, when she left her job."). Therefore, the Arbitration Agreement encompasses Plaintiff's Fourth Count.

Plaintiff's only response to this is that she commenced her lawsuit after the effective date of the EFAA, so it should apply to her claims. She urges that the word "dispute" means "litigates" or "brings a case." That is the very argument rejected in the cases cited above. *Johnson*, 657 F. Supp. 3d at 550; *Walters*, 623 F. Supp. 3d at 337-38.

So, in the absence of any other consideration, this is a no-brainer – the Plaintiff should be ordered to arbitrate her claims and this case stayed pending the result of that arbitration. In a desperate effort to avoid that inescapable conclusion, Plaintiff tries to interject that "other consideration."

### D. The Motion for Leave to Amend Is Denied

Recognizing that this court would almost certainly order her to arbitration, Plaintiff seeks at the very least to delay that result by moving for leave to amend her complaint to add as

defendants the two CVS managers – Yearwood and Saddik – who were alleged in her original pleading to have subjected her to harassment. The proposed second amended complaint alleges the same facts as the Amended Complaint, including Saddik's alleged violent threat against a female customer, Saddik's failure to protect Plaintiff after she was harassed by a customer, Saddik's role in encouraging a culture of disrespect toward female employees, and Yearwood's retaliatory actions in response to Plaintiff's complaints. *See* Proposed Second Am. Compl. attached to Decl. of Samuel O. Maduegbuna (ECF No. 20) Ex. 1 ("Proposed Compl.") ¶¶ 27, 41, 48, 52, 59-60, 67, 71-72. All of these events took place in 2019, prior to Plaintiff's going out on leave on January 2, 2020. Proposed Compl. ¶ 76.

While leave to amend a complaint should be freely granted, there is good cause to deny Plaintiffs' motion in the circumstances of this case.

Yearwood and Saddik are both New York residents. It is obvious that Plaintiff proposes adding Yearwood and Saddik to her complaint in order to destroy diversity at a time when motions to dismiss or stay the case and to compel arbitration are pending. Federal law is clear that a court need not allow such an amendment. "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court." 28 U.S.C. § 1447(e). In deciding whether to permit or deny joinder, a district court must decide whether joinder and remand "would comport with principles of fundamental fairness." *Wagley v. JP Morgan Chase Bank NA*, No. 18-cv-8668 (PGG), 2019 WL 13223235, at *4 (S.D.N.Y. Sept. 10, 2019). Four factors weigh into that analysis: "(1) any delay, and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and

(4) the plaintiff's motivation in moving to amend." *Id.* (quoting *Lebetkin v. Giray*, No. 18-cv-8170 (DLC), 2018 WL 5312907, at *2 (S.D.N.Y. Oct. 28, 2018)).

The first is whether there has been delay in joining the new parties and the reasons therefor. Plaintiff filed her original complaint pro se in January 2023. She identified Yearwood and Saddik in the body of that pleading, in her factual allegations, but did not sue them. Of course, as a pro se plaintiff she should be given the benefit of the doubt about who could or should be sued in a such a matter. But just three months later, on April 12, 2023, newly-retained counsel filed a First Amended Complaint, in which Yearwood and Saddik were once again identified but not sued. Counsel cannot be charged with ignorance of the fact that individual defendants could be sued under the New York City Human Rights Law. And counsel offers no justification for not naming Yearwood and Saddik in his Amended Complaint, which was filed specifically to correct the legal errors in the pro se Plaintiff's earlier pleading.

CVS removed the case to federal court almost immediately after the Amended Complaint was filed. Plaintiff had 30 days to seek to remand, but did not do so. Nor did she choose to amend the complaint to add the individual defendants at that time. Instead, counsel waited until August 14, 2023, well after CVS moved to compel arbitration on June 30, 2023. Then and only then did she seek to add the new parties to her case. No newly learned facts justified the addition; the "possibility that plaintiff's' injuries resulted from [Yearwood's and Saddik's conduct] was just as well known to plaintiff[] when [she] filed [her] complaint as it is now." *Deutchman v. Express Scripts, Inc.*, No. 07-cv-3539 (DLI) (RER), 2008 WL 3538593, at *3 (E.D.N.Y. 2008).

Turning to the second factor – prejudice to the Defendant – there would be nothing "fundamentally fair" about adding these new defendants at this moment. In fact, allowing the

amendment can only result in delay and additional expense for CVS, to its prejudice. The arbitration clause in plaintiff's contract of employment applies equally to conduct perpetrated by CVS or any of its employees, of whom Yearwood and Saddik are two. Adding these two as defendants would simply divest the court of jurisdiction to order the parties to arbitration and require defendants to start over again by bringing a motion to compel arbitration in the New York State Supreme Court. That would be anything but fair. While that motion would no doubt be successful, it would sit in a lengthy queue of motions waiting to be decided in a court even busier than this one. Thus, the second fairness factor weighs against permitting joinder.

The third factor, the risk of parallel litigation, also weighs against allowing joinder and remand. While it is true that Plaintiff could make a frivolous filing in state court against Yearwood and Saddik, requiring them to respond by filing motions to compel arbitration, there is little to no risk that CVS and its employees will have to litigate on that front, since I must assume that the state court will respect the arbitration agreement and compel arbitration. Denying joinder here would not give rise to any concern about inconsistent verdicts or judicial efficiency typically associated with parallel litigation.

Finally, the fourth factor, the party's motivation in seeking joinder, weighs heavily against granting Plaintiff's motion. Waiting to try to join the individual defendants until CVS had already made such a motion in this court is purely dilatory and "all but compel[s] that the complaint was amended with the deliberate purpose of divesting this court of jurisdiction." *McGee v. State Farm Mutual Auto Ins. Co.*, 684 F. Supp. 2d 258, 264-65 (E.D.N.Y. 2009). "[A] principal desire to destroy federal diversity jurisdiction is an impermissible motive." *Deutchman*, 2008 WL 3538593, at *4 (quoting *Nazario v. Deere & Co.*, 295 F. Supp. 2d 360, 364 (S.D.N.Y.

2003)). Taken together, fundamental fairness counsels against granting Plaintiff's motion for leave to amend.[3]

### E. The Case Will Be Stayed Pending Arbitration

Courts have the discretion to dismiss or stay an action when all of the issues in it must be arbitrated, *Johnson v. Tishman Speyer Properties, L.P.*, No. 09-cv-1959 (WHP), 2009 WL 3364038, at *4 (S.D.N.Y. Oct. 16, 2009), but must stay rather than dismiss if either party requests a stay. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015). Here, Defendant requested a stay as an alternative to dismissal. *See* Def.'s Mot. Dismiss (ECF No. 12). This Court as a rule stays rather than dismisses a case pending arbitration. Therefore, I stay all further proceedings in this lawsuit and direct that Clerk of Court administratively close the case, without prejudice to any party's motion to reopen within 30 days after the conclusion of the arbitration proceedings. *See Clearfield v. HCL Am. Inc.*, No. 17-cv-1933, 2017 WL 2600116, at *2 (S.D.N.Y. June 14, 2017).

---

[3] CVS argues that the claims against the Yearwood and Saddik are time barred because any actions of which they are accused took place more than three years prior to the date on which the motion for leave to amend was filed, which was August 14, 2023. If it were clear that the statute of limitations had expired I would have no problem adopting this argument; however, the statute of limitations was extended by 228 days due to the COVID stay imposed by order of Governor Cuomo, which stay applies to all claims asserted under New York state or municipal law. N.Y. Comp. Codes R. & Regs. Tit. 9 §§ 8.202.67, 8.202.8 (2020) (tolling statute of limitations from March 20, 2020 through November 3, 2020, for a total of 228 days); *see Afanassieva v. Page Transportation, Inc.*, No. 21-3090, 2022 WL 7205009, at *1 (2d Cir. Oct 13, 2022). It is entirely possible that the claims against Yearwood and Saddik are time barred even taking the extra number of days into account; the 228th day of 2023 is August 16, and no conduct is specifically alleged against either man on or after December 29, 2019. However, it is not necessary to get into the weeds on this issue, since there is every reason to deny the motion on other ground.

## CONCLUSION

The motion to compel arbitration is granted; the motion to dismiss the complaint is denied; the alternative motion to stay the case pending arbitration is granted; the motion for leave to file an amended complaint and remand to the New York State Supreme Court is denied.

The Clerk is directed to remove the motions at ECF Nos. 12 and 18 from the Court's list of open motions and to close this case administratively pending arbitration.

This is the decision and order of the Court. It is a written decision.

Dated: January 24, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL